IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CRUM & FORSTER SPECIALTY INSURANCE COMPANY,**<br><br>    Plaintiff,<br><br>v.<br><br>**SPIKE'S PUB & GRUB, d/b/a Vincint Von Hart LLC, and DEVIN ELLIOTT,**<br><br>    Defendants. | Case No. 3:21-CV-1722-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Default Judgment filed by Plaintiff Crum & Forster Specialty Insurance Company ("CFSIC"). (Doc. 16). CFSIC seeks an order declaring that it owes no duty to defend or indemnify Defendant Spike's Pub & Grub, d/b/a Vincint Von Hart LLC ("Spike's"), in a case pending in the Circuit Court of St. Clair County, Illinois. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

On May 17, 2021, Devin Elliott ("Elliott") filed a complaint in the Circuit Court of St. Clair County, Illinois, styled *Devin Elliott v. Spike's Public House, LLC, d/b/a Spike's Pub & Grub, et.al.*, Case No. 21-L-0470 (the "Underlying Action"). In the Underlying Action, Elliott alleges that on March 18, 2021, Spike's sold or gave alcoholic beverages to Corey Lyell, causing Lyell's intoxication. (Doc. 16-1). While intoxicated, and as a result of his intoxication, Lyell attacked Elliott and stabbed him multiple times, inflicting severe injury upon Elliott. (*Id.*).

In Count I of his state court complaint, Elliott asserts Spike's was negligent under Illinois law for failing to keep security personnel on the premises, failing to remove

intoxicated persons from its premises, failing to protect Elliott from reasonably foreseeable criminal activities committed by its patrons, and failing to establish procedures to maintain the safety of its invitees. (*Id.*). Elliott also claims Spike's otherwise was careless and negligent in providing adequate security. (*Id.*). In Count II, Elliott alleges a claim against Spike's under Illinois's Dram Shop Act, 235 ILCS 5/6-2. (*Id.*). In Count III, he asserts a claim for battery against Lyell. (*Id.*). Elliott alleges that, as a result of Spike's acts and omissions, he was severely and permanently injured, disabled, and disfigured; he became liable for large sums of money for hospital, medical, and other health care services necessary for the treatment of his injuries; and he experienced great physical pain and mental anguish. (*Id.*).

Spike's was insured under a Commercial General Liability policy issued by CFSIC with effective dates of March 11, 2021, to March 11, 2022 ("the Policy"). (Doc. 16-2). The Policy had limits of liability of $1,000,000 Each Occurrence and a $2,000,000 General Aggregate limit. (*Id.*). Spike's has sought coverage under the Policy for the claims asserted against it in the Underlying Action. CFSIC, however, has advised Spike's in writing that it owes no obligation to defend or indemnify Spike's based on the terms of the Policy.

On December 20, 2021, CFSIC filed a Complaint for Declaratory Judgment in this Court seeking a declaration that it has no duty to defend or indemnify Spike's under the Policy. (Doc. 1). The Court twice ordered CFSIC to amend the Complaint to properly allege a basis for federal subject matter jurisdiction. (Docs. 6, 8). The Second Amended Complaint was filed on January 18, 2022. (Doc. 9). Both Spike's and Elliott failed to answer the Complaint, and the Clerk of Court entered default pursuant to Federal Rule of Civil Procedure 55(a) as to both Defendants on July 22, 2022. (Doc. 15). CFSIC then filed the instant Motion for Default Judgment. (Doc. 16).

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). CFSIC is a Delaware corporation with its principal place of business in New Jersey. (Doc. 9). Spike's is an Illinois limited liability company with its principal place of business in Illinois. (*Id.*). Spike's has two members/managers, Daniel David Spreichinger and Rachel Fairchild Spreichinger, both of whom are citizens of Illinois. (*Id.*). Elliott also is a citizen of Illinois. (*Id.*). Thus, Plaintiff and Defendants are completely diverse.

In addition, the amount in controversy plausibly exceeds $75,000, exclusive of interest and costs. In a declaratory judgment action, "the amount in controversy is measured by the value of the object of the litigation." *State Auto Prop. & Cas. Ins. Co. v. Leitschuh*, No. 3:19-CV-3169, 2019 WL 9831022, at *1 (C.D. Ill. Sept. 17, 2019) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). "The object of the litigation is the pecuniary result that would flow to the plaintiff or the defendant from the court granting the declaratory judgment." *Id.* (quoting *America's MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004)). "In the insurance context, both the cost of providing a defense and the potential cost of indemnifying [the insured] count toward the amount in controversy." *RSUI Indem. Co. v. JMT Dev. Inc.*, 572 F. Supp. 3d 482, 486 (N.D. Ill. 2021) (citations omitted).

In this case, CFSIC asserts the amount in controversy exceeds the jurisdictional threshold, which is supported by the claims made in the Underlying Action. There, Elliott seeks damages in excess of $50,000 for his severe and permanent injuries, his hospital and medical bills, and for his great physical pain and mental anguish. Damages awarded to a plaintiff for "[s]uch severe and lasting damage," as well as costs, could easily exceed $75,000, exclusive of interest and costs. *See id.* at 487. Given Elliott's prayer for relief and the fact that

the Policy has a limit of liability of $1,000,000 for each occurrence, the Court finds CFSIC could be subject to liability in excess of $75,000, exclusive of interest and costs.[1]

**LEGAL STANDARD**

Rule 55(a) requires the clerk to enter default when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise. FED. R. CIV. P. 55(a). The clerk's entry of a default "is merely a formal matter and does not constitute entry of a judgment." 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2682 (3d ed. 2010). "Once default is established, and thus liability, the plaintiff still must establish his entitlement to the relief he seeks." *VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)).

**DISCUSSION**

In Illinois, "[a]n insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1006 (7th Cir. 2021) (quoting *Windridge of Naperville Condominium Ass'n v. Philadelphia Indemnity Insurance Co.*, 932 F.3d 1035, 1039 (7th Cir. 2019)). The court must "ascertain and give effect to the intention of the parties, as expressed in the policy language." *Id.* (quoting *Thounsavath v. State Farm Mutual Automobile Insurance Co.*, 104 N.E.3d 1239, 1244 (Ill. 2018)). An unambiguous contract must be applied as written. *Id.*

---

[1] The Court notes that Illinois's Dram Shop Act is "the sole remedy against a dramshop for injuries caused by intoxicated patrons." *Hopkins v. Powers*, 497 N.E.2d 757, 759 (Ill. 1986). Thus, the Court should not consider Elliott's negligence claim when determining the amount in controversy. Nevertheless, the Dram Shop Act limits liability for final judgments or settlements awarded after January 20, 2022, to $77,787.30. Thus, the amount in controversy is satisfied by Count II alone.

In an insurance coverage dispute, the burden is initially on the insured party to show that its losses are covered under the policy's coverage terms. *Id.* (citing *Addison Insurance Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009)). A duty to defend arises if the allegations in the complaint fall within or potentially within the coverage of the policy. *W. Bend Mut. Ins. Co. v. Krishna Schaumburg Tan, Inc.*, 183 N.E.3d 47, 55 (Ill. 2021). This is known as the "eight corners" rule: "the court compares the four corners of the underlying complaint with the four corners of the insurance policy to determine whether facts alleged in the underlying complaint fall within or potentially within coverage. If they do, the insurer has a duty to defend." *Am. Alternative Ins. Corp. v. Metro Paramedic Servs., Inc.*, 829 F.3d 509, 513–14 (7th Cir. 2016) (internal citation omitted). An insurer "may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *Id.* at 514 (quoting *Pekin Ins. Co. v. United Contractors Midwest, Inc.*, 997 N.E.2d 235, 241 Ill. (2013)). Both an insurance policy and an underlying complaint are liberally construed in favor of the insured. *Church Mut. Ins. Co. v. Prairie Vill. Supportive Living, LLC*, No. 21 C 3752, 2022 WL 3290686, at *3 (N.D. Ill. Aug. 11, 2022).

Once a duty to defend has been established, the burden shifts to the insurer to demonstrate that an exclusion applies. *Bradley Hotel Corp.*, 19 F.4th at 1006. "Exclusions are read narrowly and apply only if their application is 'clear and free from doubt.'" *Id.* (quoting *Scottsdale Insurance Co. v. Columbia Insurance Group, Inc.*, 972 F.3d 915, 919 (7th Cir. 2020)).

### A. Coverage Under CFSIC's Policy

CFSIC first argues that no coverage exists for the allegations against Spike's in the Underlying Complaint because the bodily injury alleged in the Underlying Complaint was

not caused by an "occurrence" as that term is defined under Coverage A of the Policy. Thus, it has no duty to defend Spike's in the Underlying Action.

The Policy provides, in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1. **Insuring Agreement**

    a. We will pay those sums that the insured becomes legal obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

    * * *

    b. This insurance applies to "bodily injury" and "property damage" only if:
    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory."

    * * *

**SECTION V – DEFINITIONS**

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(Doc. 16-2 at pp. 18, 31).

The complaint in the Underlying Action alleges that on March 18, 2021, Spike's sold or gave alcoholic beverages to Lyell, which were consumed by Lyell while on the premises, Spike's continued to sell or give alcoholic beverages to Lyell causing his intoxication, and that, as a result of his intoxication, Lyell attacked Elliott, stabbing him multiple times and inflicting severe injury upon him. The complaint alleges Lyell intended to harm and did cause a harmful contact to Elliott without his consent.

Based on these allegations, CFSIC argues, the Underlying Action does not seek to impose liability for bodily injury or property damage caused by an "occurrence" as that term is defined in the Policy. That is, it does not allege that Elliott's injuries resulted from an accident. Rather, the complaint alleges Spike's sold or gave alcohol to Lyell, causing his intoxication, and that as a result of his intoxication, Lyell intentionally attacked Elliott.

By their default, Elliott and Spike's have failed to dispute CFSIC's contention that the Policy offers no coverage because the Underlying Complaint does not allege bodily injury or property damage from an "occurrence" as that term is defined in the Policy—*i.e.*, an accident. *See Am. Select Ins. Co. v. Harbison*, No. 2:22CV44-PPS/JEM, 2022 WL 16919913, at *2 (N.D. Ind. Nov. 14, 2022) (defaulting party in insurance coverage suit failed to dispute alleged conduct fell within definition of "bullying," which was excluded from coverage). Accordingly, the Court finds CFSIC is entitled to default judgment as to Count I of the Complaint for Declaratory Judgment.

### B. Total Liquor Liability Exclusion

CFSIC alternatively argues that, even if the complaint contains sufficient allegations to support coverage, the Policy contains an exclusion that bars coverage. The Total Liquor Liability Exclusion of Coverage A of the Policy provides:

> This insurance does not apply to:
>
> **c. Liquor Liability**
>
> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
> (1) Causing or contributing to the intoxication of any person;
>
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

(Doc. 16-2 at p. 48).

CFSIC argues that the allegations in the Underlying Complaint fall squarely within the scope of the Policy's Total Liquor Liability Exclusion. Thus, even if the Policy afforded coverage for the bodily injury alleged by Elliott under Coverage A, coverage would be precluded by operation of the exclusion.

Again, Elliott and Spike's have failed to dispute CFSIC's arguments. And the Court agrees with CFSIC that, even if the Policy provided coverage for Spike's, the Total Liquor Liability Exclusion would bar that coverage. The Complaint in the Underlying Action alleges that Spike's sold or gave alcoholic beverages to Lyell, causing his intoxication. As a result of his intoxication, Lyell attacked Elliott and stabbed him multiple times, causing severe bodily injuries. Furthermore, in Count II of the Underlying Complaint, Elliott asserts a claim under Illinois's Dram Shop Act, which provides a right of action for a person injured by an intoxicated individual against any person licensed to sell alcohol and who, by selling or giving alcohol, causes the intoxication of such person. *See* 235 ILCS 5/6-21.

Because the Total Liquor Liability Exclusion applies to bar any coverage provided by the Policy, CFSIC is entitled to default judgment as to Count II of the Complaint for Declaratory Judgment. CFSIC owes no duty to defend Spike's in the Underlying Action.

**C. Indemnification**

CFSIC also asks the Court to declare that it has no duty to indemnify Spike's. It is well established that the duty to indemnify is narrower than the duty to defend. *Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 331 (7th Cir. 2021) (citing *Outboard Marine Corp. v. Liberty*

*Mut. Ins. Co.*, 607 N.E.2d 1204, 1221 (Ill. 1992)). The duty to indemnify is an insurer's duty "to reimburse the insured for losses it incurs directly or to pay sums that the insured becomes legally obligated to pay others." *Id.* (quoting *Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006)). The duty to indemnify applies when the insured's claim "actually falls within the scope of coverage." *Id.* (quoting *Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017)).

In the Seventh Circuit, the "general rule" is that "a suit to determine an insurer's obligations to indemnify its insured is premature until the insured has been determined to be liable to somebody." *Bankers Tr. Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 680 (7th Cir. 1992). More precisely, the "duty to indemnify [is] unripe until the insured has been held liable." *Citizens Ins. Co. of Am. v. Thermoflex Waukegan, LLC*, 588 F. Supp. 3d 845, 856 (N.D. Ill. 2022). Furthermore, in addition to concerns about justiciability, a court considering a declaratory judgment generally cannot "decide issues of ultimate fact that could bind the parties to the underlying litigation." *Shockley*, 3 F.4th at 331 (citing *Maryland Cas. Co. v. Peppers*, 64 Ill. 2d 187, 355 N.E.2d 24, 30 (Ill. 1976)). Thus, determining whether an insurer has a duty to indemnify the insured for a particular liability is only ripe if the insured has been found liable in the underlying litigation. *Id.*

Here, the Underlying Action remains pending in St. Clair County. Because determining whether CFSIC has a duty to indemnify would require the Court to adjudicate facts in the Underlying Action, the Court denies that portion of CFSIC's motion without prejudice.

## Conclusion

For these reasons, the Motion for Default Declaratory Judgment filed by Plaintiff

Crum & Forster Specialty Insurance Company (Doc. 16) is **GRANTED in part and DENIED in part**. CFSIC owes no duty to defend its insured, Spike's Pub & Grub, d/b/a Vincint Von Hart LLC, in the Underlying Action pending in the Circuit Court of St. Clair County, Illinois. The request for a declaration that CFSIC owes no duty to indemnify Spike's is **DENIED without prejudice**.

IT IS SO ORDERED.

DATED: January 4, 2023

**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**